UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| SHAU-RON SYKES, | ) | No. CV 13-07409-VBK |
| | ) | |
| Petitioner, | ) | MEMORANDUM AND ORDER GRANTING |
| | ) | RESPONDENT'S MOTION TO DISMISS |
| v. | ) | AND DISMISSING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| LOS ANGELES SHERIFF'S | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## SUMMARY

Respondent has filed a Motion to Dismiss Petitioner Shau-Ron Sykes' Petition for Writ of Habeas Corpus, on the grounds that: (1) Petitioner has not named the proper respondent to this action; (2) Petitioner's federal habeas action here was untimely filed; and (3) some or all of Petitioner's habeas claims are unexhausted. In addition, the Court has screened Petitioner's claims pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United Stated District Courts to determine if it plainly appears from the petition or attached exhibits that Petitioner is not entitled to relief in this District Court.

As discussed more fully below, the Court finds that Petitioner

has not named the proper Respondent; some of Petitioner's claims are not cognizable in a federal habeas action; and the instant federal habeas action was not timely filed.   Accordingly, the Court grants Respondent's Motion to Dismiss and dismisses the instant federal habeas action.

## FACTUAL BACKGROUND and PROCEDURAL HISTORY

Petitioner, a California state prisoner proceeding pro se, has filed several pleadings, some of them with exhibits attached, which this Court has reviewed; and this Court has also reviewed the pleadings and documents filed and lodged by Respondent, and a factual background set forth in an opinion from the California Court of Appeal denying Petitioner's direct appeal. (See, e.g., Lodgment 2 at 2-3.) Based on those documents and that opinion, this Court has assembled the following factual background and procedural history:

On June 14, 2005, Petitioner and a companion entered a house, at gunpoint, where three people were inside.   Petitioner and the companion entered a bedroom where two of the people were, woke them up, and demanded money.   Petitioner and his companion took money, a watch, a bracelet, and some marijuana, and then they left the house.

Petitioner was arrested about a month after the crime.   After being advised of his Miranda rights, Petitioner admitted that he had been in the bedroom where the two people were accosted and the items were stolen.   Petitioner's fingerprints were also found on a blue metal box that had contained money in the bedroom.

On several occasions prior to trial, Petitioner was sent for evaluation of his mental condition.   On November 15, 2005, the court found Petitioner incompetent to stand trial within the meaning of

California Penal Code § 1368 and ordered him placed at Patton State Hospital, a California state forensic mental hospital. On May 2, 2006, the court found Petitioner competent and reinstated the criminal proceedings. But then, on June 13, 2008, the court again found Petitioner incompetent to stand trial and recommended that he again be placed at Patton State Hospital. On December 19, 2008, Petitioner was again declared competent to stand trial, and the court re-instated the criminal proceedings. (See Docket No. 34 at 6-7.)[1] In his papers here, Petitioner states that he has "bi-polar disorders" (see Docket No. 75 at 27); and he states that he "has a long history of hospitalizations in and out of the system due to complications that stir [sic] from being on the O.J. Simpson v. Mark Fuhrman [sic] trial." (See Docket No. 75 at 63.)

Petitioner claims that, while he was incarcerated in the Los Angeles County Jail and awaiting trial on the break-in robbery charges, on or about October 24, 2006, Petitioner was assaulted and anally raped by a Los Angeles County Sheriff's Deputy while a few other Sheriff's Deputies held him down and participated in the assault. Petitioner claims that the Deputy who raped him was wearing a condom, and Petitioner claims that he was able to "snatch off the condom" from his rapist; and Petitioner claims that he eventually gave the sperm-filled condom to his trial attorney, to keep as evidence. (Docket No. 75 at 51.) Petitioner also claims that the rapist Deputy used a baton to force a penny, a "small gadget bottle [sic]," and "some police horse feces" into his rectum. (Docket No. 44 at 18.)

---

[1]     This Court will cite documents in the record by their docket number and by the page numbers assigned by the Court's electronic scanning system.

Petitioner claims that another Deputy used a baton to force a 9mm bullet down Petitioner's throat. Petitioner goes on to allege that the next day he "coughed up" the 9mm bullet in the presence of a Los Angeles County Superior Court Judge in the Judge's chambers. (Docket No. 44 at 14, 18-19.) Petitioner also claims that Deputies assaulted him again, a day or two after the rape, and warned him about being a "rat" or a "snitch." (See Docket No. 34 at 6-7; Docket No. 44 at 22)

On March 9, 2009, a jury in the Los Angeles County Superior Court convicted Petitioner of first degree residential burglary, in violation of California Penal Code § 459 (see Lodgment 1 at 1; Lodgment 2 at 1); and Respondent states that on June 8, 2009 Petitioner was eventually sentenced, as a two-strike offender under California's Three Strikes Law, to 17 years in state prison. (See Respondent's Motion to Dismiss ["R's MTD"] at 1; see also Docket No. 34 at 3; Docket No. 44 at 2; Docket No. 75 at 21.)

Appellate counsel was appointed to represent Petitioner in a direct appeal; and, on July 24, 2009, appellate counsel filed a "Wende" brief, pursuant to People v. Wende, 25 Cal. 3d 436 (1979), with the California Court of Appeal, case no. B217800, advising the appellate court that there were no issues being raised on appeal. (See Lodgment 2 at 2.) Petitioner then filed three separate handwritten "letters" and miscellaneous attachments with the appellate court. (See id.) The Court of Appeal stated that:

> Though difficult to understand, [Petitioner's] responses contain a number of allegations. To the extent we can decipher the responses, it appears that appellant contends that (1) there was insufficient evidence to support his conviction; (2) his

4

1    constitutional rights were violated because he had to

2    wear waist and leg shackles during trial; (3) the trial

3    court made evidentiary errors when it admitted

4    appellant's interview and excluded evidence of third

5    party culpability; (4) appellant was improperly removed

6    at the time of sentencing; (5) the court improperly

7    enhanced his sentence with the prior conviction; (6)

8    appellant is mentally unable to be responsible for a

9    crime of such nature; (7) prosecutorial misconduct; and

10    (8) ineffective assistance of counsel.

11 (Lodgment 2 at 3.)

13    The California Court of Appeal, in a reasoned, unpublished

14 opinion filed on March 29, 2011, then went on to deny each of

15 Petitioner's claims on the merits. (See Lodgment 2 at 2-5.)

16    Respondent asserts that "[i]t does not appear that Petitioner

17 timely filed a Petition for Review in the California Supreme Court"

18 (see R's MTD at 1); and the Court's own review of the record does not

19 reveal that any Petition for Review was filed in the California

20 Supreme Court following the California Court of Appeal's denial of

21 Petitioner's direct appeal.[2]

22    On November 28, 2011, Petitioner apparently signed and

23 constructively filed a habeas corpus petition in the California Court

25    [2]    While Petitioner states that he filed a Petition for Review
in the California Supreme Court, he cites the same case number that
26 was assigned to his appeal in the California Court of Appeal, that is,
case no. B217800. (See, e.g., Docket No. 34 at 3.) This Court is not
27 aware of any facts or evidence in the record establishing that
Petitioner ever filed a Petition for Review in the California Supreme
28 Court after the California Court of Appeal denied his direct appeal in
case no. B217800.

1   of Appeal, case no. B237627.  (Lodgment 4.)[3]  On December 12, 2011, the

2   Court of Appeal denied that petition without comment or citation to

3   authority.  (Lodgment 5.)

4       On January 19, 2012, Petitioner signed and constructively filed

5   a habeas corpus petition in the California Supreme Court, case no.

6   S199666.  (Lodgment 6.)  The petition was denied on May 16, 2012,

7   without comment or citation to authority.  (Lodgment 7.)

8       On July 12, 2012, Petitioner filed a petition for writ of habeas

9   corpus in the California Court of Appeal, case no. B242473.

10  (Lodgment 8.)[4]  On July 26, 2012, the Court of Appeal denied that

11  petition without comment or citation to authority.  (Lodgment 9.)

12      Over a year later, on August 14, 2013, Petitioner signed and

13  constructively filed a second petition for a writ of habeas corpus in

14  the California Supreme Court, case no. S213013.  (Lodgment 10.)  On

15  November 13, 2013, that petition was denied with a citation to In re

16  Swain [sic] 34 Cal. 2d 300, 304 (1949).[5]  (Lodgment 11.)

17  _____

18       [3]    Construing Petitioner's papers liberally, the Court will
     give Petitioner the benefit of the so-called "mailbox rule," and deem
19   Petitioner's filings "constructively filed" on the date that
     Petitioner signed them, which is the date that Petitioner assumedly
20   gave them to prison authorities for forwarding to a court.  See
     Houston v. Lack, 487 U.S. 266, 270-71, 276 (1988) (finding that appeal
21   was timely "filed" because petitioner delivered it to prison
     authorities for forwarding to court clerk before statute of
22   limitations had run; Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th
     Cir. 2014) (mailbox rule of Houston v. Lack applies even where
23   prisoner gave federal habeas petition to another prisoner to mail from
     within the prison).

24       [4]    The lodged copy of this habeas petition is un-signed, so the
     Court does not construe this petition to be "constructively filed" on
25   an earlier date.  (See Lodgment 8 at 6.)

26       [5]    At least one District Court has noted that it is not clear
     whether such a citation to Swain indicates any untimeliness bar.  See,
27   e.g., Bennett v. Felker, 635 F. Supp. 2d 1122, 1125-26 (C.D. Cal.
     2009) (Klausner, D.J.; Federman, M.J.).  "A citation to Swain may
28                                                    (continued...)

On August 28, 2013, Petitioner constructively filed a third petition for a writ of habeas corpus in the California Supreme Court, case no. S213109. (Lodgment 12.) On November 20, 2013, that petition was denied with citations to People v. Duvall, 9 Cal. 4th 464, 474 (1995) and In re Dexter, 25 Cal. 3d 921, 925-26 (1979). (Lodgment 13.)

On September 4, 2013, Petitioner constructively filed and initiated this federal habeas corpus action by filing a California state court form entitled "Petition for Writ of Habeas Corpus" in this federal court; and that petition was stamped "filed" on October 7, 2013. (See Docket No. 1.) The gravamen of Petitioner's claims in this instant federal action are Petitioner's allegations of rape and assault by Sheriff's Deputies while he was in the custody of the Los Angeles County Sheriff's Department as an inmate at the Los Angeles County Jail awaiting trial, and Petitioner's complaints about his subsequent trial and conviction for residential burglary. (See Docket No. 1 at 11-41.) In an Order dated October 10, 2013, this Court identified numerous deficiencies in that first Petition and dismissed the Petition with leave to amend. (See Docket No. 3.)

Eventually, on February 18, 2014, Petitioner, using a federal form "Petition for Writ of Habeas Corpus by a Person in State Custody (28 U.S.C. § 2254)," filed a "First Amended Petition." (Docket No. 34.) Petitioner has gone on to file numerous other documents which this Court has construed as supplementing the First Amended Petition,

---

[5](...continued)
indicate the supreme court denied a claim because the petitioner failed to explain his reasons for delay in presenting the claim, or it may indicate it denied the claim because the petitioner failed to allege the claim with sufficient particularity." Bennett v. Felker, id. (citing Swain, 34 Cal. 2d at 304).

including, <u>inter alia</u>, another document labeled "First Amended Petition" that was filed on March 21, 2014 (Docket No. 39-3); another document labeled "Amended Petition [sic]" that was filed on April 24, 2014 (Docket No. 43) and another document, also labeled "First Amended Petition," that was filed on April 30, 2014 (Docket No. 44); and, taken together, these four documents and Petitioner's other supplemental papers comprise what is now collectively referred to as the "First Amended Petition."

On July 30, 2014, Respondent "Los Angeles Sheriff's Department" [sic] filed a "Motion to Dismiss First Amended Petition [etc.]" (hereinafter "Motion to Dismiss" or "R's MTD"). As noted, Respondent argues that the First Amended Petition is subject to dismissal because (1) Petitioner has not named a proper respondent; (2) this federal habeas action is untimely; and (3) the current petition of record contains unexhausted claims. (<u>See</u> R's MTD at 1.)

On August 6, 2014, all the parties consented to proceed before this United States Magistrate Judge for all further proceedings in this case, including decision on all dispositive and non-dispositive matters and the ordering of the entry of a final judgment. (<u>See</u> Docket No. 57.)

On March 3, 2015, Petitioner filed a document entitled "Motion for Request to (Oppose) [sic] Respondent's Motion to Dismiss First Amended Petition [etc.]," which this Court considers Petitioner's Opposition to Respondent's Motion to Dismiss (hereinafter "Opposition" or "P's Opp"). (Docket No. 75.)

**PETITIONER'S CONTENTIONS**

Construing the documents and supplemental papers comprising the

First Amended Petition liberally (notwithstanding the fact that most of Petitioner's claims are vague and conclusory, and some are unintelligible), and taking into consideration Respondent's characterizations of Petitioner's contentions, the Court finds that Petitioner presents the following claims, which the Court has divided into "civil rights claims" and "habeas claims," as follows:[6]

**A.   Civil rights Claims.**

1.   Petitioner's civil rights were violated when he was raped and assaulted by Los Angeles County Sheriff's Deputies in October 2006 while he was an inmate at the Los Angeles County Jail. (See Docket No. 34, FAP at 6; Docket No. 44 at 11.)

2.   Prison authorities were "deliberately indifferent" and "failed to act" on Petitioner's complaints about the rape and assault incidents (citing Farmer v. Brennan, 511 U..S. 825 (1994)).

3.   Petitioner apparently alleges that the use of a "rape kit" and the taking of photographs during a follow-up rape test that was given by infirmary nurses amounted to "cruel and unusual punishment." (See Docket No. 43 at 7; Docket No. 44 at 7.)

4.   Petitioner apparently claims that officials threatened to kill his mother in connection with the rape case. (See Docket No. 75 at 55.)

5.   Petitioner's trial counsel was ineffective because he promised Petitioner that he would have Petitioner's civil rape case heard after Petitioner's criminal trial was concluded, but, to date,

---

[6]   The Court has identified and assigned its own numbers to Petitioner's contentions, and has not followed the numbers assigned by Petitioner to his claims, since Petitioner's identification and numbering of his own claims is not always consistent or logical.

trial counsel has failed to do so.  (See FAP at 5-6.)  Petitioner also alleges that trial counsel delayed the rape case after Petitioner contacted the California State Bar to complain about trial counsel's delay in bringing the rape case.  (See Docket No. 75 at 36-37.)

6.   Petitioner also complains that certain female prison guards coerced him into masturbating in front of them and showing his penis to them; and he claims that they called him names like "nigger" and "carpet head."  (Docket No. 75 at 57.)

**B.   Habeas Claims.**

7.   Petitioner apparently alleges that he was offered a 6-year plea deal before trial, but because he was not competent at the time the deal was offered he could not meaningfully consider the deal or agree to it; and he apparently complains that he would have accepted the plea offer if it had been held open until he regained competency. (Docket No. 75 at 20.)

8.   The trial judge was guilty of judicial misconduct because, Petitioner alleges, he was admonished for his conduct in three different cases, and apparently criticized in newspaper articles. (See FAP at 7; Docket No. 34 at 6; Docket No. 44 at 15.)

9.   The District Attorney was guilty of prosecutorial misconduct for commenting to the jury that Petitioner was a gang member.  (Docket No. 75 at 23.)

10.   Petitioner's constitutional rights were violated because he had to wear waist and leg shackles, or a "stealth belt and handcuffs," throughout the burglary trial.  (See FAP at 6; Docket No. 75 at 19; Docket No. 44 at 5.)

11.   Petitioner is actually innocent of the burglary conviction

because a third party, a "Richard Prada" or "Richard Prado," stated that Petitioner "is not the perpetrator." (See Docket No. 39-3 at 6.)

12. Petitioner was improperly removed from the courtroom at his sentencing hearing, and he was sentenced in absentia, in violation of his rights. (See FAP at 7; Docket No. 24 at 6; Docket No. 75 at 22.)

13. A prior conviction was improperly and punitively mis-characterized as a "burglary even though it was a home invasion robbery," and Petitioner apparently alleges that the prior conviction was improperly used at sentencing "just so the courts could enhance his sentence." (Docket No. 75 at 19-20.)

14. Petitioner argues, in an unclear and confusing fashion, that his appellate counsel, who represented him after the burglary conviction and filed a Wende brief, was ineffective, apparently because she failed to file a brief pursuant to Anders v. California, 386 U.S. 738 (1967) or a "coram nobis" writ. (See Docket No. 34 at 6-7.)

**DISCUSSION**

**I**

**STANDARD OF REVIEW**

A. **AEDPA Standards.**

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Koerner v. Grigas, 328 F.3d 1039, 1044 (9th Cir. 2003). As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 412 (2000); see also

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners.").

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d).

While Supreme Court precedent is the only authority that is controlling under the AEDPA, this Court may also look to Ninth Circuit case law as persuasive authority "for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." <u>Howard v. Clark</u>, 608 F.3d 563, 568 (9th Cir. 2010) (citation omitted).

Furthermore, the AEDPA provides that state court findings of fact are presumed to be correct unless a petitioner rebuts that presumption by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (citing § 2254(e)(1)).

**B.   <u>Failure to Name a Proper Respondent</u>.**

The responding party here, the California Attorney General, notes that Petitioner has named the "Los Angeles County Sheriff et al." as the Respondent in this federal habeas action. (<u>See</u>, <u>e.g.</u>, Docket Nos.

34, 44.)  Respondent California Attorney General moves to dismiss this action on the ground that the Los Angeles County Sheriff is not the person presently having custody of Petitioner and is therefore not the proper respondent, as required by 28 U.S.C. § 2254 and Rule 2(a) of the Rules Governing Section 2254 Cases.  (See R's MTD at 4-5.)

Respondent is correct that Petitioner – who apparently is incarcerated at Lancaster State Prison – has not named the person having custody of him, who assumedly would be the warden of Lancaster State Prison.  For a federal court to hear a habeas corpus petition, it must have jurisdiction over the petitioner or the petitioner's custodian.  Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).  When identifying the custodian, the petitioner must name the individual state officer having custody of him or her as the respondent to the petition.  See 28 U.S.C. § 2242; Rule 2(a) of the Rules Governing Section 2254 Cases; see also Brittingham v. United States, 982 F.3d 378, 379 (9th Cir. 1992) (proper respondent is immediate custodian, that is, person having day-to-day control over petitioner who can "produce the body" of petitioner).  Failure to name a proper custodian as respondent deprives the District Court of personal jurisdiction and requires dismissal of a habeas petition for lack of personal jurisdiction.  See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Normally, the Court would allow petitioner leave to amend to name the proper custodial officer as respondent. See 28 U.S.C. § 2242 (petition may be amended or supplemented); Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971) (habeas petition should not be dismissed without leave to amend unless no tenable claim for relief can be pleaded).  However, granting leave to name a proper respondent would

1  be futile here because, as discussed below, Petitioner's civil rights

2  claims are not cognizable in this habeas action, and this habeas

3  action itself is untimely.

4

5       **C.**    **Failure to State a Claim.**

6      Reviewing Petitioner's claims under Rule 4 of the Rules Governing

7  Section 2254 Cases, this Court finds that Petitioner's claims relating

8  to the alleged rape and assaults that occurred in October 2006 are not

9  cognizable in this habeas action because they do not implicate the

10 legality of Petitioner's continuing custody for the burglary

11 conviction, but rather concern "conditions of confinement" that should

12 be addressed through a civil rights action.  As a general rule, a

13 claim that challenges the fact or duration of a prisoner's confinement

14 should be addressed by filing a habeas corpus petition; however, a

15 claim that challenges the conditions of a prisoner's confinement must

16 generally be addressed by filing a civil rights action pursuant to 42

17 U.S.C. § 1983.  See Preiser v. Rodriquez, 411 U.S. 475, 499-500 (1973)

18 (Section 1983 action is proper remedy for state prisoner challenging

19 conditions of confinement but not fact or length of custody); Badea v.

20 Cox, 931 F.2d 573, 574 (9th Cir. 1991) (civil rights action, in

21 contrast to habeas petition, is proper method of challenging

22 "conditions of confinement") (citing Preiser).

23     Here, Petitioner explicitly states that he seeks "compensatory,

24 nominal, and punitive damages" from the Sheriff's Deputies who

25 participated in the rape and the assaults (see Docket No. 75 at 66);

26 he states that he seeks to sue jail officials and others who were

27 "deliberately indifferent" to the rape and the assaults and to his

28 efforts to initiate a civil suit after the incidents; and he cites to

42 U.S.C. § 1983 in support of these claims.  Taken together, it must be found that Petitioner's claims regarding the rape and the assaults do not concern the legality of his current confinement on his burglary conviction, but rather concern "conditions of confinement" that should be redressed through a civil rights action.  See, e.g., Preiser v. Rodriquez, 411 U.S. at 507-08 (action against jailers for money damages should be brought in a civil rights claim, not a habeas petition); Porter v. Nussle, 534 U.S. 516, 528-29 (2002) (claims against prison officials for excessive force, maliciously and sadistically causing harm, or deliberate indifference should be brought in civil rights action, not habeas petition).

A federal court has discretion to construe a mislabeled habeas corpus petition as a civil rights action and permit the action to proceed as such.  See Wilwording v. Swenson, 404 U.S. 249, 251 (1971) (per curiam) (holding that state prisoners' habeas petitions, which challenged their living conditions and disciplinary measures and did not seek release, could be read to plead § 1983 claims), overruled on other grounds by Woodford v. Ngo, 548 U.S. 81 (2006); Hansen v. May, 502 F.2d 728, 729-30 (9th Cir. 1974) (where petition for writ of habeas corpus clearly did not challenge conviction or seek release from custody, but only sought return of property or reimbursement therefor, court could interpret petition as civil rights complaint) (citing Wilwording).  However, provisions of the Prison Litigation Reform Act of 1995 ("PLRA") may make it inappropriate to construe a habeas petition as a civil rights complaint.  Because of the filing fee requirements of the PLRA, its provisions requiring sua sponte review of complaints, its limits on the number of actions a prisoner may be permitted to file in forma pauperis, and its requirement that

15

a prisoner generally exhaust administrative remedies, a prisoner should not be obligated to proceed with a civil rights action. See 28 U.S.C. §§ 1915 & 1915A; 42 U.S.C. § 1997e; Bunn v. Conley, 309 F.3d 1002, 1007 (7th Cir. 2002) (stating that courts should not re-characterize the nature of a prisoner's claim because the PLRA and the AEDPA created "pitfalls of different kinds for prisoners using the wrong vehicle"). See also Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997) (stating that a court should not convert a civil rights action into habeas petition due to the implications of the abuse of the writ doctrine); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (same).

Accordingly, Petitioner's claims in the instant action regarding the alleged rape and assaults should be dismissed without prejudice to Petitioner's right to file a separate civil rights action presenting those claims, after he has properly exhausted available state administrative procedures and remedies, and voluntarily elected to pay any required filing fees. See, e.g., Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (where petitioner has not exhausted nonjudicial remedies, dismissal without prejudice is proper), overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014).

### D.  **Statute of Limitations.**

Respondent also moves to dismiss this federal habeas action on the ground that it was not timely filed.  Under AEDPA, a one-year statute of limitations applies to a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  28 U.S.C. § 2244(d)(1).  The federal statute provides that the one-year limitation period shall begin to run from the latest of four

possible dates; and typically, the limitation period begins running when a state judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review.  See 28 U.S.C. § 2244(d)(1)(A)-(D); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

Here, Respondent argues, and Petitioner apparently concedes, that the limitations period began running on the date Petitioner's burglary conviction became final by the expiration of the time for seeking further direct review.  Following his conviction, Petitioner filed a direct appeal in the California Court of Appeal (see Lodgment 3); and that appeal was denied in a reasoned, unpublished opinion filed on March 29, 2011. (See Lodgment 2.)  Respondent argues that Petitioner did not file a Petition for Review with the California Supreme Court (see R's MTD at 5-6); and although, as noted above, Petitioner provides some confusing assertions, Petitioner apparently does not directly dispute that he did not file a Petition for Review in the California Supreme Court, and he provides no facts to establish that he did. (See footnote 2 above.)  Accordingly, pursuant to 28 U.S.C. § 2244(d)(1)(A), Petitioner's conviction became final 40 days later, on Sunday, May 8, 2011, the day on which the time for seeking further direct review of his  conviction in the California Supreme Court expired.  See California Rules of Court, Rule 8.366(b)(1) (California Court of Appeal decision is final 30 days afer filing); and Rule 8.500(e)(1) (Petition for Review to California Supreme Court must be served and filed within 10 days after California Court of Appeal decision becomes final in that court); Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008) (stating that, where petitioner did not petition California Supreme Court for review, conviction became final 40 days

17

later)

Consequently, the statute of limitations began to run the next day, Tuesday, May 10, 2011, and Petitioner had one year from that date, until May 10, 2012, to file a timely federal habeas petition. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001).[7]

Using the "mailbox rule," the instant federal action was initiated on August 29, 2013, the date that Petitioner signed (see Docket No. 1 at 6) and constructively filed his first Petition here. See Houston v. Lack, 487 U.S. 266, at 276; Hernandez v. Spearman, 764 F.3d at 1074. Accordingly, this action was initiated well over one year – that is, 476 days, to be exact – after the statute of limitations expired on May 10, 2012. Thus, absent either statutory or equitable tolling for each of those 476 days, the instant federal habeas action was untimely filed. Furthermore, Petitioner has the burden of establishing tolling. See Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) (citations omitted) (petitioner bears burden of establishing entitlement to statutory tolling), abrogation on other grounds recognized by Moreno v. Harrison, 245 F. App'x 606 (9th Cir. 2007); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (petitioner bears burden of establishing entitlement to equitable tolling).

//

//

//

1.   **Statutory tolling, "gap" or "interval" tolling between filings.**

---

[7]   The Court notes that the period from May 10, 2011 to May 10, 2012 amounts to 366 days for the one-year period because the year 2012 was a leap year and included the extra day of February 29, 2012.

A petition may be eligible for "statutory tolling" of the statute of limitations during the time which a "properly filed" application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is "pending" in a state court; and that pendant period shall not be counted towards the one-year period of limitation. See 28 U.S.C. § 2244(d)(2). A State-court application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing State-court filings, including time limits governing delivery. See Pace v. DiGuglielmo, 544 U.S. at 413. In addition, so-called "gap" or "interval" tolling is available for the time between "properly filed" California state habeas petitions, at least where the petitioner is pursuing "one complete round" of the state's established appellate review process, and is pursuing a "hierarchical approach" from lower to higher state courts, and does not "unreasonably delay" between the denial of a habeas petition at one level and the filing of a next petition at a higher or successive level. See, e.g., Nino v. Galaza, 183 F.3d 1003, 1005 (9th Cir. 1999) overruled on other grounds by Harris v. Carter, 515 F.3d 1051, 1053 n.3 (9th Cir. 2008); Carey v. Saffold, 536 U.S. 214, 221-22 (2002); Evans v. Chavis, 546 U.S. 189, 200 (2006). See also Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010) ("[a]s to California habeas proceedings, collateral review is considered to be pending during the interim between a writ being denied at one court level and a new petition being filed at the next higher court level as long as the petition at the next level is filed within a reasonable period of time"); Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (where petitioner has completed "full round" of post-conviction review and exhausted claims, later round of collateral review is no longer

1   pursuit "up the ladder of the state court system," and therefore gap
2   tolling not available for the period before the second round of review
3   was initiated).

4       However, the period between when direct review becomes final and
5   the filing of a state habeas petition is not tolled because there is
6   no petition or application "pending" during that interval; tolling
7   begins when the first state habeas petition is filed.  Porter v.
8   Ollison, 620 F.3d at 958 (citing, inter alia, Nino v. Galaza, 183 F.3d
9   at 1006).  In addition, although a petitioner is entitled to statutory
10  tolling while he completes "one full round" of collateral review, see
11  Carey v. Saffold, 536 U.S. at 222, a petitioner begins a separate,
12  "non-hierarchical" round of review "each time [he] files a new habeas
13  petition at the same or lower level" of the state court system.  See,
14  e.g., Delhomme v. Ramirez, 340 F.3d 817, 820 (9th Cir. 2003)
15  (citations omitted), abrogated on other grounds by Waldrip v. Hall,
16  548 F.3d 729, 734 (9th Cir. 2008).  In short, statutory tolling
17  generally does not apply to "non-hierarchical" petitions.  See Ford v.
18  McDonald, No. CV 09-7371 JAK FFM, 2011 WL 4500008, at *5 (C.D. Cal.
19  June 21, 2011) (Mumm, M.J.).

20      However, as noted, the gap or interval between the denial of a
21  habeas petition at one level and the filing of a next habeas petition
22  is not tolled if the latter petition is not timely filed.  See Stewart
23  v. Cate, 757 F.3d 929, 935 (9th Cir. 2014) (citing Carey, 536 U.S. at
24  225).  In the absence of a clear indication by a state court that a
25  petition is untimely, the federal habeas court must itself
26  independently examine the delay in each case and determine what the
27  state courts would have held in respect to timeliness, and decide
28  whether the filing was made within what California would consider a

"reasonable time." See Stewart v. Cate, 757 F.3d at 935 (citing Evans v. Chavis, 546 U.S. 189, 198 (2006)). California has a special system governing appeals when prisoners seek relief on collateral review, which requires filing within "a reasonable time." See Stewart, id. (citing Evans, 546 U.S. at 192). In Evans, the Supreme Court found that a 6-month delay between filings in the California courts was unreasonable. See Evans, 546 U.S. at 198. The Supreme Court has instructed federal habeas courts, under California's system, to apply a 30-to-60-day benchmark for California's "reasonable time" requirement. Stewart, 757 F.3d at 935. The Ninth Circuit has also noted that "[a]lthough there is no hard rule for what constitutes a reasonable time delay in California, this Court has found an upper limit of approximately sixty days to be appropriate, unless an adequate explanation for additional delay has been provided." Torres v. Long, 527 F. App'x 652, 654 (9th Cir. 2013) cert. denied, 134 S. Ct. 931, 187 L. Ed. 2d 802 (2014) (citations omitted).

### 2.   **Analysis of statutory tolling**.

With these principles in mind, the Court notes that on November 28, 2011, Petitioner constructively filed his first habeas corpus petition in the California Court of Appeal, case no. B237627. (Lodgment 4.) Since this was Petitioner's first state habeas petition, the time between the date his conviction became final on May 10, 2011 and time when he filed this first state habeas petition on November 28, 2011 was not statutorily tolled, since no state habeas petition was "pending" during that period. See Nino v. Galaza, 183 F.3d at 1006. Accordingly, 203 days of the 365-day one-year statute of limitations period expired during that interval between May 10,

1    2011 and November 28, 2011.  On December 12, 2011, the Court of Appeal

2    denied that petition without comment or citation to authority.

3    (Lodgment 5.)

4         On January 19, 2012, Petitioner constructively filed a habeas

5    corpus petition in the California Supreme Court, case no. S199666.

6    (Lodgment 6.)  Since that state habeas petition was filed within a

7    "reasonable time" following the denial of the habeas petition to the

8    California Court of Appeal (that is, 38 days later), the interval

9    between those two habeas actions is also statutorily tolled.  See

10   Evans v. Chavis, 546 U.S. at 195.  The petition to the California

11   Supreme Court was denied on May 16, 2012, without comment or citation

12   to authority.  (Lodgment 7.)

13        On July 12, 2012, Petitioner constructively filed another

14   petition for writ of habeas corpus in the California Court of Appeal,

15   case no. B242473.  (Lodgment 8.)  This petition represents a second

16   pass through the California Court of Appeal with a habeas petition;

17   and since Petitioner was now not proceeding in a "hierarchical"

18   fashion to a "higher" state court, but had gone backwards to the

19   California Court of Appeal, he receives no tolling for the time from

20   May 16, 2012, the date the California Supreme Court denied his earlier

21   petition, until July 12, 2012, the date this petition was

22   constructively filed, a period of 57 days, which means that 260 days

23   of the one-year 365-day period had now expired.  See Porter, 620 F.3d

24   at 958; Delhomme, 340 F.3d at 820.

25        The California Court of Appeal denied that second habeas petition

26   in case no. B242473 on July 26, 2012, apparently without comment or

27   citation to authority.  (See Lodgment 9.)  Since that petition was

28   apparently "properly filed," the limitations period was tolled during

1   the pendency of that petition.  <u>See</u> <u>Porter</u>, 620 F.3d at 958.

2      On August 14, 2013, Petitioner constructively filed a second
3 habeas petition in the California Supreme Court, case no. S213013.
4 (Lodgment 10.)  Since this habeas petition followed the denial of his
5 earlier, second habeas petition to the California Court of Appeal,
6 Petitioner was arguably again proceeding in a "hierarchical" fashion.
7 However, since that earlier second habeas petition in the California
8 Court of Appeal was denied on July 26, 2012, 384 days had passed
9 before Petitioner constructively filed this second habeas petition in
10 the California Supreme Court on August 14, 2013.  Here, Petitioner
11 does not explain why it took 384 days to file his next state petition.
12 Accordingly, this Court must find that that un-explained 384-day gap
13 was "unreasonable," far exceeding the usual 30-to-60-day "reasonable"
14 allowed gap, and therefore that gap was not entitled to statutory
15 tolling.  <u>See</u> <u>Evans</u>, 546 U.S. at 198; <u>Stewart</u>, 757 F.3d at 935.  <u>See</u>
16 <u>also</u> <u>Banjo v. Ayers</u>, 614 F.3d 964, 970 (9th Cir. 2010) (delay of 146
17 days unreasonable); <u>Bennett v. Felker</u>, 635 F. Supp. 2d 1122, 1126-27
18 (C.D. Cal. 2009) (delay of 93 days unreasonable).

19      Furthermore, the 384-day gap itself exceeded the allowed 366-day
20 one-year period from May 10, 2011 to May 10, 2012; and that gap alone
21 rendered this instant petition untimely.  When taken together with the
22 other 260 un-tolled days set forth above, by the time Petitioner filed
23 this second habeas petition in the California Supreme Court, a total
24 of 644 un-tolled days had expired (<u>i.e.</u>, 260 + 384); and therefore the
25 one-year statute of limitations in the applicable 366-day year had
26 expired some 278 days earlier (<u>i.e.</u>, 644 - 366 = 278).

27      Since the one-year statute of limitations had now expired, any
28 later state court filing could not revive it, and would have no impact

on these calculations.  (See Lodgments 12, 13.)  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (section 2244(d) does not permit the re-initiation of limitations period that has ended before a state petition was filed).  Absent equitable tolling, the instant federal habeas action was untimely filed.

### 3.   Equitable Tolling Principles.

AEDPA's one-year statute of limitations is also subject to equitable tolling.  See Holland v. Florida, 560 U.S. 631, 649 (2010); Gibbs v. Legrand, 767 F.3d 879, 884-85 (9th Cir. 2014).  A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  Gibbs v. Legrand, 767 F.3d at 884-85 (citing Pace v. DeGuglielmo, 544 U.S. at 418).  The Ninth Circuit has noted that "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule"; and the Ninth Circuit has noted that the Supreme Court's formulation in Pace "is consistent with our sparing application of the doctrine of equitable tolling" only in "extraordinary circumstances."  See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (citations omitted).  Thus, a petitioner must show that the extraordinary circumstances at issue were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time. See Porter v. Ollison, 620 F.3d at 959 (citation omitted).  "[T]he prisoner must show that the 'extraordinary circumstances' were the but-for and proximate causes of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations and internal quotation

marks omitted).  Consequently, as the Ninth Circuit has recognized, equitable tolling will be justified in few cases.  See Spitsyn, 345 F.3d at 799.

To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances.  See Roy v. Lampert, 465 F.3d 964, 972 (9th Cir. 2006).  However, diligence alone is not enough to warrant equitable tolling; and vague claims of circumstances that caused delay will not warrant equitable tolling either.  See, e.g., Ware v. Hill, No. CV 13-07249-DFM, 2014 WL 3845108, at *4-5 (C.D. Cal. Aug. 5, 2014)(McCormick, M.J.); Sirhan v. Galaza, No. CV 00-05686 BRO AJWx, 2015 WL 58676, at *16 (C.D. Cal. Jan. 5, 2015) (Walsh, M.J.)  Furthermore, equitable tolling is not warranted for "a garden variety claim of excusable neglect."  Holland v. Florida, 560 U.S. at 633 (2010) (citation omitted).

Mental illness or incompetence may be an extraordinary circumstance warranting equitable tolling when it is beyond the petitioner's control and prevents the petitioner from filing a timely habeas petition.  See Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003).  In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated a two-part test to determine whether a mental impairment amounts to an "extraordinary circumstance" warranting equitable tolling.  Forbes v. Franke, 749 F.3d 837, 840 (9th Cir. 2014)(citing Bills v. Clark, 628 F.3d at 1093).  The impairment have been (1) so severe that the petitioner was unable to personally understand the need to timely file a habeas petition; and (2) the impairment must have made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's

diligence.   <u>Forbes</u>, <u>id.</u> (citing <u>Bills</u>).   In addition, the Ninth Circuit has stated that the ability to litigate during the limitations period may be evidence that the petitioner's mental health does not warrant equitable tolling.   <u>See</u>, <u>e.g.</u>, <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1035 (9th Cir. 2005) (where petitioner had managed numerous successful filings during the limitations period, equitable tolling not warranted).

### 4.   <u>Analysis of Equitable Tolling.</u>

In light of the foregoing principles, it must be found that Petitioner has not carried his burden of showing that he is entitled to equitable tolling for any reason.   Petitioner's Opposition to Respondent's Motion to Dismiss is a confusing and disjointed pleading that is primarily directed to Petitioner's complaints about his alleged rape and assault in the Los Angeles County Jail in October 2006.   Petitioner offers no argument or facts to show that he was pursuing his rights diligently, from the time his conviction became final in May 2010 through the time, over three years later, that he finally filed the instant federal habeas action in September 2013, and that some "extraordinary circumstance" prevented him from timely filing this federal habeas action.   <u>See</u> <u>Gibbs</u>, 767 F.3d at 884-85. And Petitioner has made no showing that any "extraordinary circumstance" was the but-for and proximate cause of his untimeliness. <u>See</u> <u>Spitsyn</u>, 345 F.3d at 799 (9th Cir. 2003).

In particular, while Petitioner has detailed mental health problems and commitments at a state mental hospital <u>before</u> his trial, and he alleges that he was not competent to evaluate or accept a plea offer before trial, Petitioner does not allege, or provide any facts

to support, a finding that mental health problems affected him <u>after</u> his conviction to the extent that they prevented him from filing a timely federal habeas petition.  The record reflects that Petitioner made numerous filings in the state courts after his conviction; and it does not appear in any of them that Petitioner complained that he did not have the mental competence to prosecute those applications.  Taken together, Petitioner has not shown that any mental impairments justify equitable tolling here.  <u>See</u> <u>Forbes v. Franke</u>, 749 F.3d at 840 (citing <u>Bills v. Clark</u>, 628 F.3d at 1093); <u>Gaston v. Palmer</u>, 417 F.3d at 1035; <u>see also</u> <u>Canez v. Ryan</u>, 25 F. Supp. 3d 1250, No. 12-CV-2232-PHX-PGR, 2014 WL 2708363 (D. Ariz. June 13, 2014) (timing and number of petitioner's filings during limitations period showed that petitioner's mental condition did not preclude him from litigating, and equitable tolling not warranted).

### 5.   Claim of Actual Innocence as Exception to Limitations Period.

Construing the claims in the collective First Amended Petition here liberally, Petitioner presents a claim that could be interpreted to argue that he is actually innocent, and therefore entitled to an exception to the statute of limitations requirement.  Specifically, Petitioner claims that a "Richard Prada" or "Richard Prado" stated that Petitioner "is not the perpetrator" (<u>see</u> Docket No. 39-3 at 6), which arguably implies that Petitioner contends he is actually innocent of the burglary.

A credible showing of "actual innocence" may allow a petitioner to pursue his constitutional claims on the merits in a federal habeas action, notwithstanding the existence of a procedural bar to relief,

and overcome AEDPA's one-year statute of limitations. See McQuiggin v. Perkins, ___ U.S. ___, 133 S. Ct. 1924, 1931-32 (2013).  However, this exception only applies to a "severely confined category" of cases in which the petitioner offers "new evidence" that can satisfy the standard set forth in Schlup v. Delo, which requires a demonstration "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  See McQuiggan v. Perkins, 133 S. Ct. at 1933, 1935 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).  To pass through the Schlup gateway, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  Schlup, 513 U.S. at 327; see also Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (same).

Here, it must be found that Petitioner's assertion that the alleged witness could establish that he was "not the perpetrator" and was actually innocent is vague and conclusory.  As far as this Court is aware, Petitioner offers no more than this passing reference, in one of his supplemental filings, to this assertion; and he provides no declaration from the purported, proposed witness either. (See Docket No. 39-3 at 6.)  Such a conclusory and incomplete assertion is not sufficient to satisfy the Schlup gateway for an actual innocence claim.  See, e.g., Ratliff v. Hedgpeth, 712 F. Supp. 2d 1038, 1054 (C.D. Cal. May 4, 2010) (finding conclusory assertions insufficient to meet Schlup standard).[8]

---

[8]  The Court also notes that Petitioner alleges that he was not mentally competent to evaluate or accept a proffered plea bargain before trial; and he apparently complains that, when he was restored to competence, the plea bargain was not available.  While this claim could conceivably be interpreted to argue that Petitioner's conviction

(continued...)

### 6. <u>Exhaustion.</u>

Lastly, the Court finds that it is not necessary to consider Respondent's argument that the collective First Amended Petition contains un-exhausted claims that should be dismissed because, since Petitioner's civil rights claims are subject to dismissal, and since Petitioner's habeas claims must be dismissed as untimely, the entire action must be dismissed, and therefore the exhaustion issue is moot. <u>See</u>, <u>e.g.</u>, <u>Serobyan v. Clay</u>, No. CV 07-4127 VAP(FFM), 2008 WL 3540053, at *3 (C.D. Cal. Aug. 13, 2008) (Mumm, M.J.) (where petition is subject to dismissal as untimely, issue of exhaustion as basis for dismissal is moot).

### <u>ORDER</u>

In light of all of the foregoing,

**IT IS HEREBY ORDERED as follows:**

1.   Respondent's Motion to Dismiss the instant federal habeas action is **GRANTED**;

2.   Petitioner's civil rights claims are dismissed without prejudice;

3.   The Court declines to issue a Certificate of Appealability

---

[8](...continued)
was obtained as a result of his incompetence, and is therefore comparable to a conviction of one who is actually innocent, the Court is not aware of any cases justifying an exception to the one-year habeas statute of limitations on this precise ground.

("COA");[9] **and**

4. Petitioner's habeas claims are dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: <u>March 19, 2015</u>          <u>          /s/          </u>
                                       VICTOR B. KENTON
                                       UNITED STATES MAGISTRATE JUDGE

---

[9]      Under 28 U.S.C. §2253(c)(2), a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Here, the Court has made the finding and conclusion that the Petition is time-barred. Thus, the Court's determination of whether a Certificate of Appealability should issue here is governed by the Supreme Court's decision in <u>Slack v. McDaniel</u>, 529 U.S. 473, 120 S. Ct. 1595 (2000), where the Supreme Court held that, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. at 484. As the Supreme Court further explained:

"Section 2253 mandates that both showings be made before the court of appeals may entertain the appeal. Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." <u>Id</u>. at 485.

Here, the Court finds that Petitioner has failed to make the requisite showing that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."